JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-9729-GAF; CR 10-542-GAF | Date | April 24, 2012 |
|---|---|---|---|
| Title | United States of America v. Alfredo Orozco-Gallegos | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          **(In Chambers)**

### ORDER RE: SECTION 2255 MOTION

Petitioner, who pled open to a charge of violating 8 U.S.C. § 1326(a), moves to set aside his conviction based on ineffective assistance of counsel. He contends that he was improperly advised by his counsel regarding his right to appeal that conviction, and that he failed to file an appeal despite Petitioner's direction to his counsel that an appeal challenging the Court's sentence should be filed.[1]

The Court appointed counsel to represent Petitioner in these proceedings.[2] The Court has now conducted an evidentiary hearing and has read and considered the briefing submitted by the parties. For reasons discussed briefly below, the petition is **DENIED.**

---

[1] Petitioner also raised issues regarding the validity of his prior convictions in state court. This Court previously addressed that issue in its minute order of December 27, 2011. Moreover, Petitioner has raised claims regarding the alleged failure to provide him notice regarding his consular rights, but as the body of this order indicates, he was in fact advised of those rights and elected not to have the Mexican consul notified. The Court will not further address these issues, which are fully briefed in the government's opposition to the present Petition.

[2] Attorney Stephen G. Frye, a member of the Court's indigent panel, was appointed and prepared all briefing on behalf of Petitioner.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9729-GAF; CR 10-542-GAF | Date | April 24, 2012 |
|---|---|---|---|
| Title | United States of America v. Alfredo Orozco-Gallegos | | |

## A. BACKGROUND

Defendant, a citizen of Mexico, was present in the United States in 1983 at which time he was convicted of robbery using a sawed-off shotgun and sentenced to four years in state prison. Thereafter, he was deported from the United States on multiple occasions, but continued to return illegally. During that period, he continued to engage in criminal conduct that resulted in convictions for illegal re-entry, domestic violence, and driving under the influence with bodily injury. Immigration authorities discovered him within the Central District of California in 2010. The United States Attorney's Office charged him with a violation of 8 U.S.C. § 1326.

Defendant was offered a "fast-track" plea agreement, which he initially signed but ultimately rejected. According to all concerned, Petitioner refused the deal because the proposed sentence – 37 months in custody – was too much time for the offense. Instead, he pled open to the charge reportedly so that his attorney, Deputy Federal Public Defender Peter Goldman, could argue for a lower sentence even though Mr. Goldman advised that it was unlikely that the Court would impose a sentence lower than contemplated under the plea agreement. Moreover, Mr. Goldman advised Petitioner that, without the agreement, the low end of the sentencing guideline range was 57 months, and that, while he could preserve his right to appeal with an open plea, success on appeal was unlikely if the Court imposed a sentence within the guideline range. Mr. Goldman reiterated this prediction when meeting with petitioner to prepare for the sentencing hearing.

At the time of sentencing, Mr. Goldman in fact argued for 30 months in custody, but the Court imposed 57 months, which was the low end of the guideline range. At the end of the sentencing hearing the Court advised Petitioner of his right to appeal. After the hearing, Mr. Goldman and Petitioner spoke in the courtroom about a possible appeal before he was taken to the holding cell. Mr. Goldman reiterated that an appeal had no hope of success; they did not have any further conversation or meeting on the subject. Goldman received no further communication of any sort with his client, and indicated that he received no oral or written communication from his client directing that an appeal be filed.

Mr. Goldman's testimony was contradicted by Petitioner, who claimed that

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9729-GAF; CR 10-542-GAF | Date | April 24, 2012 |
|----------|-------------------------------|------|----------------|

| Title | United States of America v. Alfredo Orozco-Gallegos |
|-------|------------------------------------------------------|

immediately after sentencing Mr. Goldman advised that he would file an appeal.  (R.T. 2/7/2010 at 30.)  A few days later, according to Petitioner, he called Mr. Goldman's "office in San Bernardino" and left a message asking whether Mr. Goldman had filed his appeal.  (R.T.  2/7/2010 at 31-32.)  Although he uses an interpreter and does not speak much English, the conversation took place in English because the person who answered did not speak Spanish.  According to Petitioner, that was the only time that he attempted to contact Mr. Goldman.

## B. DISCUSSION

### 1. *The Scope of a Section 2255 Motion*

28 U.S.C. §2255 permits "[a] prisoner in custody under sentence of a court established by Act of Congress...imposed in violation of the Constitution or laws of the United States...[to] move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. §2255.  Section 2255 does not substitute for appeal (United States v. Frady, 456 U.S. 152, 165 (1982)) and provides no basis for non-constitutional and non-jurisdictional claims that do not result from fundamental defects that result in a miscarriage of justice.  United States v. Addonizio, 442 U.S. 178, 186-87 (1979).  Claims that were subject to direct review may not be presented in a Section 2255 proceeding without a showing of cause and prejudice, or a showing of actual innocence.  Bousley v. United States, 523 U.S. 614, 622 (1998).  Cause means something external to the petitioner that prevented him from raising the issue on appeal (Coleman v. Thompson, 111 S.Ct. 2546, 2566 (1991), and prejudice means that the error was so significant that it infected the entire trial with error of constitutional dimension.  Frady, 456 U.S., at 170.  Because claims of ineffective assistance cannot ordinarily be decided on the trial record, they are commonly raised on a Section 2255 motion.

### 2. *Ineffective Assistance of Counsel*

To succeed on an ineffective assistance claim, Petitioner must show that his counsel's performance in fact fell below an objective standard of reasonableness and that he suffered prejudice as a result.  Strickland v. Washington, 466 U.S. 668, 687-89 (1984). The first prong – the deficient performance prong – must be assessed in light of what counsel reasonably knew at the time and not from the perspective of 20-20 hindsight.

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-9729-GAF; CR 10-542-GAF | Date | April 24, 2012 |
|---|---|---|---|
| Title | United States of America v. Alfredo Orozco-Gallegos | | |

Babbitt v. Calderon, 151 F.3d 1170, 1173-74 (9th Cir. 1998). Petitioner cannot meet his burden on the first prong.

Whether or not Mr. Goldman's performance met the objective reasonableness standard requires the Court to determine the credibility of the two witnesses to the critical events in this case. Mr. Goldman states that he advised Petitioner of the benefits of the fast-track plea bargain including the reduced sentencing exposure, the substantial likelihood that his refusal of the plea offer would result in a higher sentence, and that, although he would have the right to appeal the sentence after an open plea, he had little prospect of succeeding if the Court imposed a sentence within the applicable guidelines, particularly given his criminal history. Mr. Goldman specifically advised Petitioner of his appellate rights on two occasions prior to the sentencing hearing, the Court advised him of his appellate rights at the time of sentencing, and Mr. Goldman advised Petitioner, following sentencing, that there was little point in appealing because the sentence was in fact within the guideline range. Mr. Goldman, who testified in an honest, forthright manner during the hearing, was extremely credible.

Petitioner was less so. First, the prosecutor impeached Petitioner with a declaration he signed when he attempted to file a late appeal in June 2011. In that document, he stated that he said that he had heard nothing from his attorney after the sentencing and "several times" since January 2011, attempted to contact his counsel by telephone. Petitioner claimed that he did not recall making that statement when he filed the document, despite having testified that he had read the entire document before signing it. He admitted that the statement was incorrect and that he had not attempted to contact him in or after January 2011. Second, he submitted a declaration containing a statement that he was unaware of his right to contact the Mexican consulate in connection with his case, when in fact the record includes a document signed by Petitioner indicating that he had been advised of his right to consular notification and had declined to exercise that right. Third, during his direct examination, he disavowed knowledge of the details of the plea agreement and stated as follows in response to the Court's question:

> Q:   But was the plea agreement read to you before you signed it?
> A:   Yes.
> Q:   And it was translated from English into Spanish?
> A:   No, because he didn't take an interpreter with him.

JS - 6

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9729-GAF; CR 10-542-GAF | Date | April 24, 2012 |
|---|---|---|---|
| Title | United States of America v. Alfredo Orozco-Gallegos | | |

> Q:    Do you understand English?
> A:    Very little.

(R.T. 2/7/2010 at 27.)  Thereafter, his own attorney pointed out his signature, but he asserted, "yes, but I don't understand what I signed."  (Id. at 28.)  Even so, he had to admit that an interpreter had also signed the agreement.  (Id.)  Fourth, Petitioner flatly asserted that his counsel never discussed the possibility of an appeal.  At the hearing the following exchange took place:

> Q: (By Petitioner's Counsel) This would have been the plea agreement that you agreed to a particular sentence, but you would have given up your right to an appeal, if the Court gave you that sentence.
> A: He never talked to me about the appeal.

(Id. at 29.)  This is entirely inconsistent with the theory that one of the reasons for rejecting the plea agreement was to preserve appellate rights.  If they did not discuss the possibility of an appeal, then it seems highly unlikely that Petitioner withdrew from the plea agreement to preserve rights that were not discussed.

Based on this information and the Court's observations during the hearing, the Court noted that Petitioner provided evasive, and clearly false, answers to a number of simple questions that undermine his credibility in this case.  The Court likewise took note of his demeanor and manner while testifying, which also indicated a discomfort with the need to answer the specific though simple questions asked during the hearing.  Having considered the testimony of both witnesses, and having evaluated their credibility, the Court concludes that Mr. Goldman did advise Petitioner of his appellate rights, that he did advise Petitioner of those rights before and after sentencing, that he advised Petitioner that an appeal was unlikely to be successful, and that Petitioner never directed him to file an appeal in this case.

Although Petitioner contends that it is illogical to conclude that he would decline to appeal a 57 month sentence after rejecting the fast-track plea agreement, the Court disagrees.  The principal reason for rejecting the agreement was to argue for a lower sentence to the trial judge.  Indeed, Petitioner testified at the hearing as follows:

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9729-GAF; CR 10-542-GAF | Date | April 24, 2012 |
|---|---|---|---|
| Title | United States of America v. Alfredo Orozco-Gallegos | | |

> Q: Did you understand or was it important to you that if you pleaded without an agreement, that you could receive a sentence of less than 37 months?
> A: Yes, because I asked the attorney if I could do that and he said yes.

(Id. at 30.)  What Petitioner hoped for was that he could convince the Court to impose a sentence of less than 37 months; he ignored the potential consequences that the effort might fail and understood that if it did the prospects of changing the result on review were slim at best.  He did nothing to pursue those rights until several months later when it was too late.  The fault here lies with Petitioner, not with Mr. Goldman.

Accordingly, the Court concludes that Mr. Goldman provided Petitioner with effective assistance of counsel.

**C.  CONCLUSION**

The motion is **DENIED** and the petition is **DISMISSED**.

**IT IS SO ORDERED.**

_____ : _____

Initials of
Preparer                 _____